UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MAURICE UNDERWOOD and RENO MOVERS, LLC,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ANDREW J. MACKAY, et al.,<br><br>　　　　Defendants. | Case No. 3:12-cv-00533-MMD-VPC<br><br>ORDER<br><br>(Defs.' Motion to Dismiss – dkt. no. 17;<br>Plfs.' Motion for TRO – dkt. no. 25;<br>Plfs.' Motion for Preliminary Injunction<br>– dkt. no. 26;<br>Plfs.' Motion to File Supplementary<br>Declaration – dkt. no. 27) |

## I. SUMMARY

Before the Court are Defendants' Motion to Dismiss (dkt. no. 17), as well as Plaintiffs' Motions for a Temporary Restraining Order and for a Preliminary Injunction (dkt. nos. 25, 26). On June 21, 2013, the Court heard oral argument on the motions. After the hearing, Plaintiffs filed a Motion to File Supplementary Declaration in Opposition to Motion to Dismiss. (Dkt. no. 37.) Because Plaintiffs' challenge is not ripe for review, Defendants' Motion is granted, and Plaintiffs' requests for injunctive relief are denied. Plaintiffs' motion to supplement his previous declaration is also denied, but with leave to file a properly signed declaration.

## II. BACKGROUND

### A. The Plaintiffs

Plaintiff Maurice Underwood owns and operates a moving company called Man With Van Moving Services ("the Company") as a sole proprietor. Underwood established the Company in 2004. He also formed Reno Movers, LLC in 2011. Plaintiffs

Underwood and Reno Movers, LLC bring this action challenging as unconstitutional the state of Nevada's requirement that they obtain a Certificate of Public Convenience and Necessity ("Certificate") in order to operate a moving company.  Plaintiffs argue that the laws governing issuance of these certificates "create an arbitrary and irrational procedure that deprives Plaintiffs of their liberty without bearing any rational connection to the protection of the public health, safety, or welfare." (*See* First Amended Compl. ("FAC"), dkt. no. 14 at ¶ 2).  Plaintiffs currently do not have a Certificate and allege that they are allowed only to load and unload moving trucks without one.  Plaintiffs further allege that in 2005, an employee of the Company was cited for operating without a Certificate.  Underwood paid the subsequently imposed citation.

Plaintiffs also allege in their FAC that Underwood submitted an application for a Certificate in 2011, but was denied.  (*See* FAC at ¶ 18.)  However, Defendants' Motion to Dismiss represented that Underwood was never denied his application and instead withdrew it in July 2012 before a final determination.  (*See* dkt. no. 17 at 3:7; dkt. no. 35, exh. 3.)  Plaintiffs conceded that Underwood withdrew his application in their Response to the Motion to Dismiss (*see* dkt. no. 20 at 7:17-19), but nearly fourth months later inexplicably attached a declaration in support of their injunctive relief motions in which Underwood testified he applied for and was denied a Certificate (*see* dkt. no. 27 at ¶ 5). Plaintiffs again conceded in their Reply to their injunctive relief motions that Underwood voluntarily withdrew his application before a determination was made.  (*See* dkt. no. 31 at 7 n.5.)  After being questioned on this point of confusion at oral argument, Plaintiffs' counsel initially represented that Underwood had filed two applications in the past, claiming that one was denied and the second voluntarily withdrawn. But after Defendant's counsel stated that the state only had a record of one application, which was voluntarily withdrawn, Plaintiffs' counsel conceded that the history of prior application filings was unclear to him. The record only provides evidence of one application for a Certificate, in October 2011 (*see* dkt. no. 17, exh. 2), and indicated that Underwood voluntarily withdrew it in July 2012 (*see* dkt. no. 35, exh. 3).  The Court takes

judicial notice of the application as a public record. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688–90 (9th Cir. 2001). After the hearing on June 21, 2013, Plaintiffs moved to supplement Underwood's declaration to clarify that the prior application was filed on behalf of Man with Van Moving Service by Underwood and his wife, Dawn Underwood, and that this application was denied. (*See* dkt. no. 37.) The declaration was not signed by Underwood but by counsel, noting he signed with Underwood's permission. The application attached to the motion shows that Dawn Underwood was doing business as Man with Van Moving Service.

### B.     The Regulatory Regime

Plaintiffs specifically challenge NRS §§ 706.391 and 706.151, and NAC § 706.1375, subsections of which require any person applying for a Certificate to attend an administrative hearing and to ensure that a new applicant does not unreasonably impact the business of other similar businesses in the area it seeks to operate.

NRS § 706.386 requires, with limited exception, that all fully regulated common motor carriers operating as carriers of intrastate commerce obtain a Certificate from the Nevada Transportation Authority ("NTA"). In order to issue a Certificate, the NTA must convene an administrative hearing to determine whether the applicant meets certain criteria. *See* NRS §§ 706.391(1) (requiring the NTA to set a hearing for the application), 706.391(2) (listing requirements for grant of Certificate). The applicant for a Certificate bears the burden of proving the following:

> (a) The applicant is financially and operationally fit, willing and able to perform the services of a common motor carrier and that the operation of, and the provision of such services by, the applicant as a common motor carrier will foster sound economic conditions within the applicable industry;
>
> (b) The proposed operation or the proposed modification will be consistent with the legislative policies set forth in NRS 706.151;
>
> (c) The granting of the certificate or modification will not unreasonably and adversely affect other carriers operating in the territory for which the certificate or modification is sought;
>
> (d) The proposed operation or the proposed modification will benefit and protect the safety and convenience of the traveling and shipping public and the motor carrier business in this State;

3

>   (e) The proposed operation, or service under the proposed modification, will be provided on a continuous basis;
>
>   (f) The market identified by the applicant as the market which the applicant intends to serve will support the proposed operation or proposed modification; and
>
>   (g) The applicant has paid all fees and costs related to the application.

NRS § 706.391(2).

Key to this dispute is requirement (c), which Plaintiffs suggest unreasonably and unconstitutionally insulates established businesses at the expense of new entrants to the industry. The applicant bears the burden of proving that their proposed operation meets the requirements set forth in subsection (2). NRS § 706.391(5). Nevertheless, the NTA cannot find "that the potential creation of competition in a territory which may be caused by the granting of the certificate or modification, by itself, will unreasonably and adversely affect other carriers operating in the territory for the purposes of paragraph (c) of subsection 2." NRS § 706.391(3).

NAC § 706.1375(2) sets forth additional requirements for an applicant to receive a Certificate, including statements concerning the general description of the service being offered, the geographical area to be served, statements of the rates or fares to be charged, facts showing that the proposed operation will be beneficial to the traveling public, and the qualifications and experience of the personnel operating the business.

NRS § 706.391(2)(b) requires that the business operate consistent with the legislative goals set forth in NRS § 706.151:

>   (c) To provide for fair and impartial regulation, to promote safe, adequate, economical and efficient service and to foster sound economic conditions in motor transportation.
>   . . .
>   (d) To encourage the establishment and maintenance of reasonable charges for:
>
>       (1) Intrastate transportation by fully regulated carriers; and
>
>       (2) Towing services performed without the prior consent of the owner of the vehicle or the person authorized by the owner to operate the vehicle,

4

> without unjust discriminations against or undue preferences or advantages being given to any motor carrier or applicant for a certificate of public convenience and necessity.
>
> (e) To discourage any practices which would tend to increase or create competition that may be detrimental to the traveling and shipping public or the motor carrier business within this State.

NRS § 706.151(1). Plaintiffs suggest that goal (e) is a constitutionally infirm legislative goal for the state to pursue in issuing Certificates.

Lastly, NAC § 706.3966(2) allows third parties to petition the NTA to intervene in a Certificate application process if they allege that granting the Certificate would

> (a) Tend to increase or create competition or create some other effect that may be detrimental to the traveling and shipping public or the motor carrier business within this State, in contravention of the principle set forth in:
>
> (1) Paragraph (e) of subsection 1 of NRS 706.151; and
>
> (2) Paragraph (d) of subsection 2 of NRS 706.391; or
>
> (b) Unreasonably and adversely affect other carriers operating in the territory for which the certificate is sought, in contravention of the principle set forth in paragraph (c) of subsection 2 of NRS 706.391, the petitioner shall be deemed to have a direct and substantial interest in the proceeding if the petitioner demonstrates that he is authorized to provide the same type of service within the same territory as that which the applicant for the certificate proposes to provide.

Plaintiffs call this provision a "Competitor's Veto" that allows any intervening established business to challenge an applicant's Certificate on the grounds that a new business would disturb the competitive balance of the state.

Plaintiffs allege that these provisions permit existing moving companies to file protests against Certificate applicants concerning their qualifications for receiving a Certificate, and that they permit the NTA to refuse a Certificate for reasons unrelated to public health, safety, and welfare. (FAC at ¶¶ 28–29).

**C.    Procedural History**

Plaintiffs filed suit on October 3, 2012, against NTA Chairman Andrew J. Mackay, NTA Commissioners Michael J. Koberdanz and Monica Metz, NTA Deputy Commissioner Marilyn Skibinski, NTA Applications Manager Liz Babcock, NTA Administrative Attorney James Day, NTA financial analysts Yvonne Shelton and Lidia

Aronova, and Nevada Senior Deputy Attorney General David Newton seeking declaratory and injunctive relief on four constitutional claims: (1) deprivation of liberty without due process of law under the Fourteenth Amendment; (2) discrimination under the Fourteenth Amendment's Equal Protection Clause; (3) "vagueness and unbridled discretion of public officials" under the Fourteenth Amendment; and (4) abridgment of the Fourteenth Amendment's Privileges or Immunities Clause (asserted only by Plaintiff Underwood).  Plaintiffs allege that the Certificate hearing process is time-consuming, costly, and creates an undue and unnecessary burden on would-be applicants. They allege that administrative regime governing issuance of Certificates is not rationally related to any legitimate government interest, and is thus unconstitutional.

On November 6, 2012, Plaintiffs filed a First Amended Complaint, substituting George Assad, current Commissioner of the NTA, as a defendant in place of former Commissioner Michael J. Koberdanz.  (*See* FAC at ¶ 9).

Defendants moved to dismiss the action on December 28, 2012, arguing that Plaintiffs' claims are not yet ripe, and that they fail to state claims for violations of the Fourteenth Amendment because the Nevada provisions are rationally related to legitimate state interests.  (*See generally* dkt. no. 17.)

After full briefing on the Motion to Dismiss, Plaintiffs filed Motions for a Temporary Restraining Order and a Preliminary Injunction seeking an order enjoining administrative proceedings scheduled for July 11, 2013.  The proceedings will address a citation issued to Plaintiffs for advertising moving services without a Certificate.  (*See* dkt. nos. 25, 26).

**III. LEGAL STANDARD**

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Ripeness is "peculiarly a question of timing."  *Regional Rail Reorg. Act Cases,* 419 U.S. 102, 140 (1974).  "The basic rationale of the ripeness doctrine 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its

effects felt in a concrete way by the challenging parties.'" *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983) (*quoting Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49 (1967)). "The central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (internal quotations omitted); *see Laird v. Tatum*, 408 U.S. 1, 14 (1972) (to meet the ripeness standard, the petitioner must show either a specific present objective harm or the threat of specific future harm); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (a case that involves "contingent future events that may not occur as anticipated, or indeed may not occur at all" is not ripe for decision).

The doctrine of ripeness "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). "The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, *inter alia*, that plaintiffs have standing and that claims be "ripe" for adjudication. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010) (*citing Allen v. Wright*, 468 U.S. 737, 750 (1984)). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Id.* at 1122. The constitutional component of a ripeness question "mandates that prior to [a court's] exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas*, 220 F.3d at 1139.

The prudential component of the ripeness doctrine "is guided by two overarching considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Thomas,* 220 F.3d at 1141 (*quoting Abbott*

*Labs.*, 387 U.S. at 149). A question is fit for decision when it can be decided without considering "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002) (internal quotation marks omitted); *see also United States v. Streich*, 560 F.3d 926, 931 (9th Cir. 2009). "At the same time, a litigant need not 'await the consummation of threatened injury to obtain preventive relief. If the injury is *certainly* impending, that is enough.'" *Id.* (*quoting 18 Unnamed "John Smith" Prisoners v. Meese,* 871 F.2d 881, 883 (9th Cir. 1989) (emphasis in *Streich*)). In the context of agency action, the "fitness for judicial decision" inquiry asks whether judicial intervention would inappropriately interfere with further administrative action and whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733, (1998). Therefore, "[a] claim is usually ripe if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Ctr. For Biological Diversity v. Kempthorne*, 588 F.3d 701, 708 (9th Cir. 2009) (internal quotations and citation omitted).

On the other hand, "[h]ardship serves as a counterbalance to any interest the judiciary has in delaying consideration of a case." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012). Hardship in this context "does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." *Natural Res. Def. Council v. Abraham*, 388 F.3d 701, 706 (9th Cir. 2004). "The rule in *Abbott Laboratories* has been carefully circumscribed to regulations that pose an immediate dilemma." *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 783 (9th Cir. 2000). Plaintiffs must show that postponing review imposes a hardship on them "that is immediate, direct, and significant," and not merely financial. *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir. 1992) (*quoting* with approval *Nat'l Ass'n of Reg. Util. Comm'rs v. Dep't of Energy*, 851 F.2d 1424, 1429 (D.C. Cir. 1988)).

///

"Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a [Federal] Rule [of Civil Procedure] 12(b)(1) motion to dismiss." *Id.*

### B. Temporary Restraining Order

Under Rule 65(b) of the Federal Rules of Civil Procedure, plaintiffs seeking a temporary restraining order must establish: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). Applying *Winter*, the Ninth Circuit has since held that, to the extent previous cases suggested a lesser standard, "they are no longer controlling, or even viable." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Thus, a party must satisfy each of these four requirements.

## IV. DISCUSSION

### A. Motion to Supplement

The Court denies Plaintiffs' Motion to supplement their Opposition to Defendants' Motion to Dismiss because the declaration is defective. It is improper to submit a declaration not signed by the declarant. Underwood's updated declaration is signed by Underwood's counsel "with permission of Maurice Underwood on June 21, 2013." (*See* dkt. no. 37, exh. 1; *see* 28 U.S.C. § 1746 (requiring declarations to be supported by a signature of declarant).) Plaintiffs are given leave to file a properly authenticated application within fourteen (14) days from the entry of this Order. While the supplement clarifies the confusion relating to the withdrawn application, it also shows that Plaintiffs have not had their application denied. In any event, the inclusion of this supplement does not change the Court's decisions with respect to the pending Motion to Dismiss and motions for preliminary injunctive relief.

### B. Motion to Dismiss

This suit can be broadly described as a "pre-enforcement challenge," since it seeks to resolve "the immediate dilemma to choose between complying with newly

9

imposed, disadvantageous restrictions and risking serious penalties for violation." *Catholic Soc. Servs., Inc.*, 509 U.S. at 57.  Plaintiffs seek prospective relief against the institution of a licensing regime they feel contains unconstitutional requirements.  For this reason, the Court agrees with Plaintiffs that whether Plaintiffs' previous application was denied or withdrawn before a decision was made is not relevant to the Court's determination of ripeness.[1]

Aside from the First Amendment context, a facial challenge to an administrative licensing scheme generally cannot proceed without a developed factual record, unless the issue presented is a pure question of law.  *See Ctr. For Biological Diversity v. Kempthorne*, 588 F.3d at 708.  This is because the ripeness inquiry requires that the "scope of the controversy [be] reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  Here, no such manageable proportions are offered to the Court. The licensing scheme giving rise to Plaintiffs' suit contains both purportedly unconstitutional provisions (most notably, that a potential licensee demonstrate that their business does not unreasonably and adversely impact other carriers in the area) and constitutional provisions.  Unlike the cases cited by Plaintiffs in their Response to Defendants' Motion, which the Court discusses below, this is not a case in which filing an application would necessarily result in its denial.  Indeed, Plaintiffs seek a judicial inquiry into the interpretation and application of state regulations without the benefit of the state's own application of these regulations to Plaintiffs' business. *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1443 (9th Cir. 1996) (Kozinski, J., concurring in part and dissenting in part) ("Not until plaintiffs are denied a license under the authority of the regulations do they have a sufficiently 'concrete' interest in the

---

[1] As the Court noted at the hearing, while the existence of a previously withdrawn application may not be relevant, allegations in the pleadings and briefs must still be accurate and reflective of the records.

constitutionality of the statute authorizing the regulations to give rise to a 'ripe' claim."). It is entirely conceivable that a modest new entrant into the motor carrier industry in Northern Nevada would not have any adverse impact on competition or the viability of others in the industry, such that its application would be granted. In that situation, there would be no injury, and no suit to institute. Particularly relevant is NRS § 706.391(3), which explicitly provides that potential creation of competition cannot on its own unreasonably and adversely affect other carriers. Plaintiffs' papers elide this point, and suggest that the legislative goals laid out in NRS § 706.151 nevertheless unconstitutionally restrict their freedom to engage in their chosen business activity. The point here is not to argue the merits of Plaintiffs' position, but rather to make clear the uncertainty that faces the Court in interpreting this regulatory scheme as applied to the facts of Plaintiffs' business.

This is thus not a typical pre-enforcement plaintiff, where the plaintiff is "[f]aced with the prospect of either punishment if he worked without a license or enduring much expense and effort to obtain the license." *Merrifield v. Lockyer*, 547 F.3d 978, 982 (9th Cir. 2008). Why force a prospective plaintiff to endure the cost of an application if the court is certain that the plaintiff will fail? If, as here, the application is not certain to fail, and factual questions exist as to what the administrative agency will conclude, the plaintiff is not faced with the Hobson's choice that renders the action ripe. Indeed, the plaintiff may well succeed, and the administrative decision may well be rendered in a constitutional manner. Such cases that do not allow the court to "make a firm prediction that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the rule" are thus unripe. *Freedom to Travel Campaign*, 82 F.3d at 1436 (*quoting* with approval *Catholic Soc. Servs., Inc.*, 509 U.S. at 69 (O'Conner, J., concurring)).

Plaintiffs suggest that their pre-enforcement challenge is the *only* way to challenge the constitutionality of the "Competitor's Veto" provision, since instituting the suit during the application process may be barred by *Younger v. Harris*, 401 U.S. 37

(1971), and instituting the suit after receiving a Certificate may be barred by the "constitutional estoppel" doctrine recognized in *Fahey v. Mallonee*. *See* 332 U.S. 245, 255 (1947) ("It is an elementary rule of constitutional law that one may not 'retain the benefits of the Act while attacking the constitutionality of one of its important conditions.'"). But these are not the only choices. Of course, receiving a Certificate and then subsequently challenging the administrative regime that granted it makes little sense, both because of the aforementioned estoppel doctrine and also because of the increased difficulty in meeting Article III's injury-in-fact requirement. Nevertheless, without determining whether in fact "exceptional circumstances" exist to justify applying *Younger* in deference to the NTA's determination, *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989), the Court notes that one obvious — and, under these circumstances, required — choice for Plaintiffs exists: challenge the constitutionality of the subject provisions if and when those provisions operate to deny Plaintiffs a Certificate.

To be sure, a plaintiff may challenge the very existence of the licensing scheme *itself* as unconstitutional. In that instance, a concrete, tangible injury arises regardless of any administrator's decision; it arises merely by entering the system. It is not clear, however, that Plaintiffs' action falls into this category. Plaintiffs generally allege that the Certificate licensing scheme "would impose significant financial costs and delays on Plaintiffs." (FAC at ¶ 20). At times, Plaintiffs seem to argue that the *entire* procedure is unconstitutional, irrespective of the majority of concededly constitutional requirements built into the procedure. (*See* dkt. no. 20 at 5 (describing the licensing scheme as "an unconstitutional procedure" and involving "an allegedly unconstitutional administrative proceeding"); dkt. no. 31 at 6 ("Underwood challenges the constitutionality of the entire process for obtaining a Certificate.").) Nevertheless, Plaintiffs specifically point to the "Competitor's Veto" provision as bearing the bulk of their constitutional scrutiny. In their Response to Defendants' Motion, Plaintiffs write that "Underwood does not challenge the state's authority to require licensure generally, or those portions of the licensing

requirements that rationally relate to protecting the health and safety of the public;" instead, "Underwood challenges only those portions of the law which are vague or lack a rational connection to public health, safety, and welfare." (Dkt. no. 20 at 3:18–21.) At the hearing, Plaintiffs again conceded that they are challenging only some provisions of the statute and regulations, not the entire statutory scheme or the state's authority to impose licensing requirements. Accordingly, this is not the type of suit challenging as illegal the entire administrative scheme. By Plaintiffs' own concession, that process is constitutional, but includes some unconstitutional requirements built into it. Whatever injury Plaintiffs would suffer from seeking a Certificate (i.e. the cost, expense, and burden of submitting to the application process generally) is injury not causally related to the unconstitutional provisions they seek to challenge here. *See Lujan*, 504 U.S. at 560 (requiring "a causal connection between the injury and the conduct complained of" to establish standing).

In furtherance of their ripeness argument, Plaintiffs cite to numerous authorities that are unavailing. First, Plaintiffs make much of the fact that § 1983 does not require administrative exhaustion. This is true. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982) (administrative exhaustion not required under 42 U.S.C. § 1983). But the ripeness inquiry does not ask the questions that exhaustion answers. The former is concerned with the presence of an injury and a court's competence to render a non-advisory opinion; the latter is a judge-made requirement "grounded in principles of comity" that is concerned with ensuring that any challenge to a state proceeding be brought first to the attention of the state. *See Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1225 (9th Cir. 2007) *on reh'g en banc*, 550 F.3d 822 (9th Cir. 2008) (noting that "[p]rudential exhaustion does not go to the *power* of the court — it does not deprive the court of jurisdiction"). For that reason, "[w]hile there is no requirement that administrative remedies be exhausted in cases brought under 42 U.S.C. § 1983, the claim must be ripe, and not moot, to be reviewed properly." *McCabe v. Arave*, 827 F.2d 634, 639 (9th

///

13

1  Cir. 1987). Citation to cases which recognize the lack of an exhaustion requirement in
2  § 1983 are thus of little value here.

3  Second, the Court declines Plaintiffs' invitation to rely on *Merrifield v. Lockyer*.
4  *Merrifield* concerned a constitutional challenge to a California licensing scheme
5  regulating the pest control industry brought by a pest controller, his business, and a
6  trade association. There, as here, the plaintiffs brought a prospective § 1983 suit
7  against state officials seeking a determination that the regulatory regime violates the
8  Equal Protection, Due Process, and Privileges or Immunities Clauses of the Fourteenth
9  Amendment. Contrary to Plaintiffs' suggestion, the state defendant in *Merrifield* did not
10 raise standing in its appeal before the Ninth Circuit. Although the Ninth Circuit noted that
11 two of the three plaintiffs, including the business owner himself, had standing to proceed,
12 the issue did not appear to be argued on the papers. *See id.* at 980 n.1. Because the
13 issue was not argued, and because no discussion was given on the subject, the Court
14 declines to consider *Merrifield* as supporting Plaintiffs' position.

15 In any event, *Merrifield* is distinguishable on the facts. The *Merrifield* plaintiffs
16 challenged, in the main, a specific, clear licensing requirement that they pass an exam
17 they argued was largely irrelevant to their business practices. There could be no doubt
18 as to what the regulation required, and no additional factual development was needed to
19 assist a court in determining the requirement's lawfulness. Here, the competition
20 requirement is not susceptible to an easy judicial interpretation in the absence of its
21 application to a particular set of facts. Rather than an easy "on-off" requirement like in
22 *Merrifield* or *United States v. Storer Broadcasting Co.*, 351 U.S. 192, 198 (1956)
23 (concerning a challenge to a rule limiting approval of broadcasting stations to applicants
24 with interests in other stations beyond a defined number), the Court is left to speculate
25 whether Plaintiffs here actually state a cognizable injury, or whether the potential for
26 injury is "hypothetical or abstract" in light of the particulars of their business' operation.
27 *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945); *see Thomas v. Anchorage Equal*
28 *Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). In a case like this one that

presents both legal and factual issues to resolve, prudence requires withholding a judicial opinion when there is simply no factual record to guide the Court's constitutional analysis. *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (noting that "[a] concrete factual situation is necessary to delineate the boundaries of what conduct the government may or may not regulate"); *Oklevueha Native Am. Church of Haw., Inc.*, 676 F.3d at 838 (holding as ripe plaintiffs' claims arising out of a discrete application of a regulation in an enforcement action, "[i]n contrast to cases in which the courts are left to hypothesize about how the law might be applied").

The Court rejects Plaintiffs' suggestion that "both sides agree that the matter is a question of law and that the law in question will certainly apply." (Dkt. no. 20:15–17.) Defendants raise the possibility that Plaintiffs' hypothetical application may well be denied on constitutional grounds. Indeed, Plaintiffs' hypothetical application may be granted on *either* constitutional or unconstitutional grounds, precluding a showing of injury-in-fact. Accordingly, it is far from certain that the "law in question will certainly apply" to injure Plaintiffs. At oral argument, Plaintiffs' counsel analogized this statute to an administrative scheme that denies Certificates to every third applicant who applies for one. The plaintiff may be the first or the second, in which case she would not be injured. But she may also be third, and thereby suffering certain constitutional injury. In that situation, the plaintiff could bring a pre-enforcement challenge before applying, since no factual question exists as to the rule's meaning and as to its application to any particular applicant. That is not so here. Factual questions must be resolved before this Court can competently pass on the scheme's constitutionality, unlike a clearly written and clearly applicable scheme that excludes all third applications. In effect, Plaintiffs have assumed unconstitutionality in order to justify ripeness. But the Court must first assure itself that Plaintiffs' controversy is ripe, and it cannot do so with the sparse record before it. For this reason, cases with a developed factual record that presented definite legal questions — like *Wooley v. Maynard*, 430 U.S. 705, 708 (1977) (plaintiffs challenged

regulation after their punishment arising out of numerous citations for violating the allegedly unconstitutional statute) and *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 624 (1986) (plaintiff brought suit after administrative determination of unlawful conduct was made and after administrative proceedings were initiated) — were considered ripe for judicial review. Where, as here, a court does not have the benefit of a complete record necessary to adjudicate a constitutional challenge, the constitution and established principles of justiciability preclude its decision.

That Plaintiffs also lodge a void-for-vagueness challenge to the "Competitor's Veto" provisions does not change this analysis. (*See* FAC at ¶ 55–58.) Unlike the First Amendment context, where the very vagueness of a licensing law creates a chilling constitutional injury, *see Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151, 89 S. Ct. 935, 939, 22 L. Ed. 2d 162 (1969) (noting that "our decisions have made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license"), the purported vagueness of Nevada's motor carrier provisions is less of a concern when agency review is available to narrow the scope of the challenge in a judicially manageable way. *See Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 207 (1st Cir. 2002) (holding that since the presence of a licensing scheme affords plaintiffs an opportunity to test the vagueness of a statute as applied to them, their failure to do so renders the case unripe); *Nat'l Multi Hous. Council v. Jackson*, 539 F. Supp. 2d 425, 428 (D.D.C. 2008) ("[T]he plaintiffs have made no showing that [the challenged regulation] — with its "vague" requirements — is being dangled over their heads like the sword of Damocles.").

Having determined that significant questions exist as to Plaintiffs' satisfaction of the injury-in-fact requirement, and that the case is not currently fit for review, the Court also notes that the hardship to Plaintiffs in the absence of judicial review is unclear. While it is undoubtedly true that challenging these provisions now would be more expedient for Plaintiffs, "'this kind of litigation cost-saving' does not 'justify review in a

16

case that would otherwise be unripe.'" *Clean Air Implementation Project v. E.P.A.*, 150 F.3d 1200, 1206 (D.C. Cir. 1998) (*quoting Ohio Forestry Ass'n*, 523 U.S. at 735). When a plaintiff's claim of harm is speculative and the agency action's effect upon her conjectural, that plaintiff cannot be heard to complain about speculative hardship. *See Municipality of Anchorage*, 980 F.2d at 1326 ("[M]ere potential for future injury does not overcome the interest of the judiciary in delaying review." (internal quotation marks omitted)).

Accordingly, the Court holds that Plaintiffs' challenge is not ripe for review. Defendants' Motion to Dismiss is therefore granted.

### C. Temporary Restraining Order

As discussed above, Plaintiffs' inability to allege a ripe claim for decision is fatal to their likelihood of success on the merits. There can thus be no argument that the NTA's threat of disciplinary action for Plaintiffs' failure to operate without a Certificate is unlawful. Plaintiffs' failure to obtain a Certificate based on their speculative fear of denial from the NTA does not ripen an otherwise improvidently filed suit. Similarly, Plaintiffs cannot successfully show a likelihood of irreparable harm in light of the speculative injury they seek to redress with this suit. The Court therefore declines Plaintiffs' request for a temporary restraining order. These same infirmities also preclude the Court's issuance of a preliminary injunction.

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (dkt. no. 17) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motions for Temporary Restraining Order (dkt. no. 25) and Preliminary Injunction (dkt. no. 27) are DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to File Supplementary Declaration in Opposition to Motion to Dismiss (dkt. no. 37) is DENIED.  Plaintiffs are given leave to re-file the supplement with a proper declaration within fourteen (14) days from the entry of this Order.

IT IS SO ORDERED.

DATED THIS 26th day of June 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE